IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|                                   |                        |
|-----------------------------------|------------------------|
| LAURA J. DIETERLE,                |                        |
| Plaintiff,                        | Civil No. 18-16393(RMB)|
| v.                                | **OPINION**            |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, |            |
| Defendant.                        |                        |

APPEARANCES:

PIERRE PIERRE LAW, P.C.
By: Jennifer H. Walker, Esq.
211 East 43rd Street, Suite 608
New York, New York 10017
    Counsel for Laura J. Dieterle

SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL
By: Stuart Weiss, Special Assistant United States Attorney
Office of the General Counsel
P.O. Box 41777
Philadelphia, Pennsylvania 19101
    Counsel for Commissioner, Social Security
    Administration

**RENEE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal by Plaintiff Laura J. Dieterle (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability benefits.  For the reasons set forth below, the Court will **AFFIRM** the decision of the Administrative Law Judge (the "ALJ").

I. <u>**PROCEDURAL HISTORY**</u>

On October 20, 2014, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging disability since November 1, 2009 due to a number of back conditions, asthma, chronic obstructive pulmonary disease, anxiety, depression, and obsessive-compulsive disorders. [Record of Proceedings ("R.P."), p. 76-83]. Plaintiff's claim was initially denied on December 24, 2014, and again denied upon reconsideration on May 15, 2015. [R.P., p. 76-91]. At a formal hearing on August 3, 2017, Administrative Law Judge Michael S. Hertzig heard testimony from Plaintiff and her attorney. [R.P., p. 38-75].

Following the formal hearing, the ALJ issued a decision on September 11, 2017, which denied Plaintiff's claim based on the ALJ's determination that Plaintiff "did not have an impairment

2

or combination of impairments that significantly limited [her] ability to perform basic work-related activities for 12 consecutive months." [R.P., p. 21]. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as final. [R.P., p. 3-10]. Plaintiff now seeks this Court's review.

II.  **STANDARD OF REVIEW**

When reviewing a final decision of an ALJ regarding disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Hess v. Comm'r Soc. Sec., 931 F.3d 198, n. 10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Hess, 931

F.3d at n. 10 (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of proof at steps one through four, and the Commissioner of Social Security at step five. Hess, 931 F.3d at 201 (citing Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). Recently in Hess, 931 F.3d at 201-02, the Third Circuit described the ALJ's role

in the Commissioner's inquiry at each step of this analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience [.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podeworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he

is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

III. **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff has suffered from a number of degenerative back conditions, including scoliosis, facet disease, and disc herniation caused or exacerbated by a decades old lifting injury suffered when she was employed as a nurse. [R.P., p. 280-87, p. 55-56]. Most recently, Plaintiff was employed by the Borough of Somerdale as a crossing guard from 2005 through 2009. [R.P., p. 186-87]. According to Plaintiff, she left her crossing guard job in 2009 because the physical demands of the job, mainly the constant standing, was causing "heavy pain" in her back and left leg. [R.P., p. 55]. Plaintiff has not worked since.

During the Relevant Period,[1] Plaintiff's medical records indicate that she sought treatment for back pain from a specialist once and mentioned back pain on six occasions from September 22, 2009 through December 13, 2010. On February 18,

---

[1] Plaintiff's alleged onset date was November 1, 2009 and she last met the insured status requirement of the Act on September 30, 2010 (the "Relevant Period"). See 42 U.S.C. §§ 423(a), (c); 20 C.F.R. § 404.131. Therefore, as the ALJ correctly notes, Plaintiff must establish that she was disabled under the Act at some point prior to September 30, 2010.

6

2010, Dr. Mohsin Sheikh performed an MRI and compared it with a prior MRI from October 16, 2007. [R.P., p. 287]. Dr. Sheikh found the following: facet disease at L1-L2; disc herniation with impingement of the thecal sac in L2-L3; a bulging disc with facet disease resulting in moderate spinal stenosis in L3-L4; significant left facet disease with a mildly narrowed spinal canal impinging on the thecal sac in L4-L5; and left facet disease with a narrowed left lateral recess in L5-S1. [R.P., p. 287]. Dr. Sheikh concluded Plaintiff suffered from moderate to severe levoscoliosis and found mild degenerative changes at multiple levels as compared to the prior MRI from 2007. [R.P., p. 287]. Plaintiff was treated with period use of Percocet and lumbar epidural steroid injections. [R.P., p. 382].

Plaintiff also sought psychiatric treatment to deal with her depression and anxiety on three occasions prior to the alleged onset date, once during the Relevant Period, and once shortly after the date of last insured. [R.P., p. 1207-1222]. Notably, as of 2010, Plaintiff's psychiatrist reported she was "doing fine" with "no sign of deterioration" at her only visit during the alleged period of disability.

At the administrative hearing, Plaintiff testified that her back pain was so severe in 2009 that she had trouble sleeping and could no longer do "household stuff" like cooking or yardwork. [R.P., p. 60-61]. Plaintiff also testified that she

7

needed a cane to walk when shopping and she did not look for other work after leaving her crossing guard job because even sitting, other than in a reclined position, was too painful. [R.P., p. 60, 70].  However, various medical records contradict Plaintiff's claim that she walked with a cane in 2010. The record also indicates that Plaintiff continued to engage in various physical activities, such as yardwork in 2010, and went on a camping trip in 2011.  In fact, Plaintiff's medical records indicate that her physical condition did not worsen substantially until 2014.

## IV. **DISCUSSION**

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, November 1, 2009. However, at step two, the ALJ concluded that Plaintiff "did not have a severe impairment or combination of impairments." [R.P., p. 21]. Because the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform work for twelve consecutive months, the ALJ concluded his analysis at step two and reached a determination that

8

Plaintiff was not disabled under 20 C.F.R. § 404.1522. [R.P., p. 21].

As noted by Plaintiff, the Third Circuit states that "[t]he burden placed on an applicant at step two is not an exacting one." McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). For this reason, "step two is to be rarely utilized as basis for the denial of benefits," and "its invocation is certain to raise a judicial eyebrow," Id. at 361. The Third Circuit instructs that the "step-two inquiry is a de minimis screening device to dispose of groundless claims." Id. at 360. In fact, if a claimant presents evidence of "more than a 'slight abnormality,' the step-two requirement of 'severe' is met," and an adjudicator should resolve any "[r]easonable doubts on severity . . . in favor of the claimant." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546-47 (3d Cir. 2003).

Thus, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea, 370 F.3d at 361. A reviewing court, however, should not "apply a more stringent standard of review in these cases" — a "denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id.

Plaintiff argues the ALJ erred by determining Plaintiff did not have a severe back or mental impairment at step two of the

9

sequential analysis for a variety of reasons. First, Plaintiff argues the ALJ employed an improper "step four standard" at step two—requiring Plaintiff "demonstrate an inability to perform her past work without accommodation in order to meet the step two level requirement of a severe impairment." [R.P., p. 8-10]. Second, Plaintiff argues her testimony "regarding the nature and extent of her pain [was] supported by objective medical evidence." [R.P., p. 11]. Finally, Plaintiff contends the ALJ erred because the retrospective medical opinions are corroborated by Plaintiff's testimony and support the existence of both severe physical and mental impairments during the relevant time period. [R.P., p. 18-23]. The Court finds Plaintiff's arguments unpersuasive.[2]

First the Court finds that the ALJ imposed the proper standard for determining a severe impairment at step two and

---

[2] Plaintiff also argues the ALJ should have followed the analytical framework in SSR 83-20, and therefore erred by failing to consult a medical advisor to determine Plaintiff's disability onset date. [R.P., p. 14-15]. But SSR 83-20 only applies when an ALJ must infer a disability onset date due to unclear or lacking medical records. See Perez v. Comm'r of Soc. Sec., 521 Fed. Appx. 51, 56-57 (3d Cir. 2013) ("We have generally applied SSR 83-20 and have required the ALJ to call a medical expert, where medical evidence from the relevant period is unavailable."). However, when, as here, the record contains evidence that either supports or contradicts a claimant's testimony, SSR 83-20 is not applicable. See Yots v. Comm'r of Soc. Sec., 704 Fed. Appx. 95, 97 (3d Cir. 2017) (finding SSR 83-20 did not apply because the record contained medical reports that contradicted the plaintiff's testimony regarding his ability to work).

properly discounted Plaintiff's testimony that was inconsistent with objective medical evidence and Plaintiff's ability to perform work functions during the Relevant Period. See Alfanador v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 69558 at *13-14 (D.N.J. May 27, 2016) (finding the ALJ "did not err by using the wrong standard at step two" because "the ALJ focuse[d] on whether Plaintiff's impairments limited his ability to perform the delineated basic work activities," and the record evidence only demonstrated a slight limitation). As previously noted, an ALJ must find an impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities" before it qualifies as a "severe impairment." Hess, 931 F.3d at 201.  At step two, "basic work activities" are "the abilities and aptitudes necessary to do most jobs," which include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." SSR-85-28. A "slight abnormality," as opposed to a "severe" impairment, only has a minimal effect on these functions and "would not be expected to interfere with the claimant's ability to work." Zaccaria v. Comm'r of Soc. Sec., 267 Fed. Appx. 159, 160 (3d Cir. 2008).

Here, the ALJ consistently focused on Plaintiff's "functional limitations" and considered the objective medical evidence, opinion evidence, and Plaintiff's testimony in

11

determining that Plaintiff "did not have an impairment or combination of impairments that significantly limited [her] ability to perform basic work-related activities for 12 consecutive months." [R.P., p. 21]. Specifically, the ALJ recognized Plaintiff's moderate to severe scoliosis, but found "no correlation to clinical findings indicative of significant functional limitations."

This Court finds that the ALJ properly discounted Plaintiff's hearing testimony, which he noted was contradicted by her "reports of independent performance of activities of daily living and no use of an assistive device for ambulation through the date last insured and continuing until July 2014 ." [R.P., p. 27]. For example, the ALJ notes that Plaintiff visited her primary care doctor on November 16, 2010, complaining of pain resulting from recent yardwork, despite the fact that Plaintiff testified that she was unable to do yardwork as of September 2009. [R.P., p. 25, 61]. Further, Plaintiff testified that she used a cane "if [she] had to walk from [her] car into [a] store to go shopping" in 2009 and 2010. [R.P., p. 70]. But during a September 2009 doctor, Plaintiff "report[ed] being functional with activities of daily living as well as ambulation without the use of an assisted device." [R.P., p. 281]. In fact, the ALJ noted that Plaintiff "reported normal ambulation without an assistive device and ability to perform

activities of daily living including cooking, driving, housekeeping, and shopping, all without assistance" as recently as April 22, 2014. [R.P., p. 26]. Additionally, the ALJ properly determined that Plaintiff's mental health issues were not severe "during the period from the alleged onset date through the date last insured" because medical records indicate only one psychiatric visit during the Relevant Period, which reflected "no worsening of complaints or mental status findings during the period at issue compared to the period prior to the alleged onset date when the claimant was working." [R.P., p. 27].

Plaintiff's final argument, that the ALJ failed to properly consider the relevant medical opinion evidence, also fails. An ALJ may discount medical opinion evidence if it is unsupported by explanations or is inconsistent with other evidence in the record. See Plummer v. Apfel, 186 F.3d 422, 429-30 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); Money v. Barnhardt, 91 Fed. Appx. 210, 213 (3d Cir. 2004) (finding that the ALJ could afford less weight to opinions of treating physicians because the opinions were "inconsistent with other medical evidence.").

Here, the ALJ assigned "little weight" to the opinion of Dr. Schachter, Plaintiff's primary care physician, that Plaintiff "was unable to work in 2010 due to chronic and severe back pain and bilateral lower extremity pain and the effects of pain medication," citing Plaintiff's right foot impairment and evidence of spinal stenosis, because the form was completed in 2014, nearly four years after the Relevant Period and was "unsupported by the medical evidence during the period at issue from the alleged onset date through the date last insured." [R.P., p. 28]. Specifically, the ALJ noted that the MRI and subsequent examination from February 2010 and the clinical findings during the relevant period "do not support spinal stenosis," nor do they "support any particular functional limitations during the period at issue." [Id.]. Additionally, although Dr. Schachter opined that she required assistance to ambulate effectively as of November 1, 2009, the record directly contradicted this assertion, as Plaintiff indicated on numerous occasions that she ambulated without assistance. The ALJ noted that Dr. Schachter's opinion regarding disabling limitations "reflect[s] apparent consideration of the functional decline that began in July 2014 with failure to provide any opinion concerning functional limitations specific to the period from the alleged onset date through the date last insured with substantiation." [Id.].

Furthermore, an opinion from Plaintiff's psychiatrist submitted in 2017 was assigned little weight because it "endors[ed] multiple marked and moderate-to-marked limitations of mental functioning" which was "unsubstantiated by the progress notes" from the relevant time period, and moreover—directly contrary to the same doctor's prior medical source statement, which had "indicat[ed] no limitations in any area of mental functioning and good ability to perform activities of daily living." [R.P., p. 30].[3]

## V.   CONCLUSION

For the reasons set forth herein, the Court finds that the ALJ's decision is supported by substantial evidence and, therefore, the Commissioner's final determination will be **AFFIRMED**. An appropriate Order shall issue on this date.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

DATED: November 27, 2019

---

[3] The ALJ also assigned little weight to other physician's opinions, in part, because none of them actually treated Plaintiff during the relevant time period, and because their opinions were contradicted by the objective medical evidence already discussed. [R.P., p. 29-31].